## BONDS.

[Hamilton (1st) Circuit Court, June 22, 1907.]

Swing, Giffen and Smith, JJ.

### EDWARD DIENST ET AL. V. FISCHMANN LOAN & BLDG. CO.

SUBROGATION OF BUILDING ASSOCIATION AGAINST GENERAL CREDITORS.

A building association through the negligence of its attorney loaned $1,000'
to one holding a defective title to the property upon which he gave ·a
mortgage to secure the loan. The mortgagor died. The proceeds of the·
loan could not be traced to his creditors, but were probably used by
the widow in satisfaction of her allowance of $1,500 for the first year's
support of herself and minor children. The attorney moved out of the
jurisdiction and in the present suit on his bond service could not be
obtained upon him: *Held*,

(1) In an action on a bond which is in the nature of a joint obligation,
the fact that one of the obligors could not be served with summons
because not within the jurisdiction of the court does not prevent the·
taking of judgment against obligors who are within. the jurisdiction.

[For other cases in point, see 2 Cyc. Dig., "Bonds," §§ 834-847.—Ed.]

(2) The building association was without remedy on its mortgage by
way of subrogation against the general creditors. of the mortgagor or the
first year's allowance to the widow.

[For other cases in point, see 2 Cyc. Dig., "Bonds," §§ 1110-1116; 7 Cyc.
Dig., "Subrogation," §§ 8-23.—Ed.]

(3) The attorney having knowledge of the mistake which he had made,.
notice to him or his bondsmen of the loss the building association had
sustained was not necessary, and laches or estoppel cannot be pleaded
in their behalf.

[Syllabus approved by the court.]

ERROR to Hamilton common pleas court.

G. C. Wilson, Boyce & Boyd and M. C. Slutes, for plaintiff in·
error.

E. A. Hafner and Robertson & Buchwalter, for defendant in
error.

SMITH, J.

Upon an examination of the testimony in this case, and the finding
of facts and conclusions of law of the trial court, we are of opinion that.
the record establishes the negligence of Edward Dienst in not reporting·
to the Fischmann Loan & Building Company the true state of the title
of the property on which it made its loan on Blue Rock street. As an
attorney at law.he held himself out as capable of examining titles to real
estate in this county, and the omission on his part to report the correct
status of the property under the administration of the probate court is.

an omission for which he cannot be excused. This being so, can his bondsmen be relieved from payment of the loss to the building association?

First. Because the court had no jurisdiction to enter judgment against the bondsmen for the reason that the principal, Dienst, was not served with a summons.

Second. Because the building association should have resorted to all of its remedies on the mortgage by way of subrogation against the general creditors of John J. Holbrook and the $1,500 set off by the appraisers for the widow's allowance.

Third. Because the building association is estopped by reason of laches.

As to the first contention, it is clear that the bond being a joint obligation, suit could be maintained and judgment rendered against such obligors as were found within the jurisdiction of the court where suit was brought, notwithstanding that some other joint obligor was without the jurisdiction, and could not be served with summons.

As to the question of subrogation, no part of the $1,000 loaned by the building association was traced to any one or more of the general creditors, this loan, together with all income from the estate of John J. Holbrook, was intermingled by Catherine Holbrook in one general account. The amount set off by the appraisers, $1,500, the widow's year's allowance, could not be obtained under the doctrine of subrogation. The evidence shows that the testator John J. Holbrook gave Catherine Holbrook by will all his real personal property, and in doing this she received every asset of every kind belonging to the estate, and there can be no doubt but that this sum was used by her for her support and that of her minor children.

We do not think the building association is guilty of laches. Notice to Dienst or his bondsmen of the loss to the building association was not necessary. Dienst himself knew of the mistake he had made in the examination of the title, and so stated when he later examined another lot for a second loan. It was his negligence that caused the loss, and it was his duty and that of his bondsmen in the first instance to protect themselves, if possible, by perhaps paying off the mortgage to the association, and then pursuing their remedy by way of subrogation, if such a remedy existed.

Judgment affirmed.

**Swing** and **Giffen, JJ.,** concur.

## CONTRACTS

### MOORES LIME CO. v. NATIONAL CHEMICAL CO. ET AL.

1. EFFECT ON BUILDING CONTRACT OF DEVIATION THEREFROM.—

A deviation from a building contract, by consent of the parties, as to materials to be used in a particular part of the construction, and a provision for the payment at its reasonable worth, do not abrogate the original contract, but the builder is entitled to his *quantum meruit* if the excess goes beyond the original consideration.

2. AMENDMENT TO CONFORM TO THE PROOF AND OPINION.—

If in an action on such *quantum meruit* the pleadings will not permit the plaintiff to recover more than the stipulated price, they may be amended to conform to the proof and opinion.

[For other cases in point, see 6 Cyc. Dig., "Pleadings," §§ 1082-1091.—ED.]

C. M. Leslie, for plaintiff.

Frank Dinsmore, for defendants.

GIFFEN, J.:

The plaintiff in its petition avers that the defendants, the National Chemical Company and the firm of Houstler & Fox, entered into various written and verbal contracts and agreements with each other by which the defendants, Houstler & Fox, agreed to do and cause to be done certain work and labor and to furnish certain materials in and about the erection of certain buildings for the use and occupancy of the defendant, the National Chemical Company, in their business, and the said National Chemical Company agreed to pay said Houstler & Fox therefor at prices stipulated in said contracts and agreements; that said Houstler & Fox have done everything on their part to be done under said contracts and agreements; that a large sum is due thereon to said Houstler & Fox; that it holds two orders in the sum of $1,557.45, drawn by the said Houstler & Fox upon the said National Chemical Company, which the chemical company refuses to pay, and prays for an accounting between the said chemical company and said Houstler & Fox, and that said chemical company be ordered to pay the plaintiff the amount of said orders out of any balance found due to Houstler & Fox.

The defendants, Houstler & Fox, answer admit the allegations of the petition.

The defendant chemical company admits that it entered into contracts with Houstler & Fox to furnish certain labor and to furnish certain materials in and about the erection of certain buildings, and agreed to pay said Houstler & Fox therefor certain stipulated prices, but denies

that Houstler & Fox have done everything on their part to be performed under said contract, or that there remains due to said Houstler & Fox a large sum of money or any sum of money, and joins in the prayer of the plaintiff for an accounting.

The cause was referred to Morrison R. Waite for the trial of both the issues of law and fact arising therein, and said referee was ordered to report his findings and decision to the court of common pleas.

Trial was had before the referee, the evidence reported in full, and his conclusions of fact and law stated separately, showing a balance due from the National Chemical Company to Houstler & Fox of $1,438.60 with interest from July 16, 1903, which amount the plaintiff is entitled to recover on its orders aforesaid.

This report was confirmed by the court of common pleas and judgment rendered for the plaintiff. The cause comes into this court on appeal by the chemical company and is submitted upon the report of the referee, including the evidence heard by him.

The chief contention arises upon the following finding made by the referee:

"After the making of said contract of October 14, 1902, for the work on the refining house, and before commencing said work and afterwards, the said contract was, by mutual agreement of the parties thereto, materially modified with respect to the execution of the concrete work on said refining house, and it was agreed by the parties that the said chemical company should pay for the work on said building what it was reasonably worth. Said work was reasonably worth eight dollars per yard for the first and second stories and nine dollars per yard for the third story measured in the wall. Said concrete work in said refining house measured in the wall in the first and second stories, amounted to 453 yards and in the third story 246 yards."

It is manifest, from the present state of the pleadings, admitting that the work was to be done at a stipulated price, that the claim is not proved in its general scope and meaning by evidence of an agreement to pay what the work was reasonably worth, which should be deemed a failure of proof within the meaning of Rev. Stat. 5296 (Lan. 8808).

The contract of October 14, 1902, provided that Houstler & Fox should receive five dollars per cubic yard for the concrete work and the specifications which were made a part of the contract provided that the concrete should be one part cement, three parts sand and four parts broken stone or clean gravel; all material to be furnished by the contractor. The material modification of the contract consisted in changing the mixture to one part of cement and six parts of sand and gravel.

The proof shows that the change was made by direction of the chemical company; that it made a better wall, and cost the contractors more money than a mixture of one to seven of sand and gravel and still more than a mixture of one to seven of sand and broken stone. It is contended, however, by the chemical company that the specifications gave it the option of either broken stone or gravel, but we think not, as this provision was made for the benefit of the contractors and that the choice of material could be exercised by them alone.

The other modifications of the contract, such as mixing the materials in a machine instead of by hand upon a board platform, are of minor importance and the question is, whether the change of mixture was such a deviation from the contract as would abrogate it, and permit a recovery of what the entire work was reasonably worth. We think not, as the general plan of the building as well as the character of the work to be performed remained the same, the only change being in the material used and the manner of mixing it, which resulted in the use of more cement and required more labor, for which the contractors should be allowed what they were reasonably worth.

The rule is stated in *Robson* v. *Godfrey*, 1 Holt's 236, as follows:

"Where work is done upon a special contract, and for estimated prices, and there is a deviation from the original plan by the consent of the parties, the estimate is not excluded, but is to be the rule of payment, as far as the special contract can be traced; and for any excess beyond it, the party is entitled to his *'quantum meruit.'*"

The testimony in this case shows that a mixture of a cubic yard of material composed of one part cement, three parts sand and four parts broken stone would lay twenty-five cubic feet in the wall, and that the same amount of material composed of one part cement and six parts sand and gravel would measure in the wall only sixteen and two-thirds feet, and would require nine-fourteenths of a cubic foot of cement more than the mixture of one to seven of sand and stone, which was worth two dollars and thirty cents per barrel—about forty-three cents.

The account may be stated as follows:

755 mixtures of 1 to 7 of sand and gravel equal..........699 cu. yds.
755 mixtures of 1 to 6 sand and gravel equal....:.......466 cu. yds.
Deficiency occasioned by change of mixture..............233 cu. yds.
699 cu. yds. as per contract @ $5 equal....................$3,495.00
Extra cement for 755 mixtures @ 43 cents equal...:.........   324.65
233 cu. yds. each reasonably worth $8.33 equal.............  1,941.00

Total ............................:.....................$5,760.05

PENNSYLVANIA CO. V. WALTER. W. RAUB, BY HIS GUARDIAN.

NONRESIDENT MINOR THROUGH GUARDIAN APPOINTED IN ANOTHER STATE MAY SUE FOR NEGLIGENCE.

An action may be maintained in this state by a minor to recover damages for personal injuries, through his guardian appointed in the state of Pennsylvania, although such minor lives in such foreign state.

[Syllabus approved by the court.]

ERROR to Mahoning common pleas court.

Arrel, Wilson & Harrington, for plaintiff in error.

Anderson, McNab & Anderson, for defendant in error.

Cited and commented upon the following authorities: Hoyt v. Sprague, 103 U. S. 613 [26 L. Ed. 585]; Morgan v. Potter, 157 U. S. 195 [15 Sup. Ct. Rep. 590; 39 L. Ed. 670]; Schweinfurth v. Railway, 60 Ohio St. 215 [54 N. E. Rep. 89]; Illinois Cent. Ry. v. Jolly, 25 Ky. Law 1735 [78 S. W. Rep. 476]; New Jersey Ry. & Transp. Co. v. Pollard, 89 U. S. (22 Wall.) 341 [22 L. Ed. 877]; Treat v. Railway Corp. 131 Mass. 371 [5 Am. & Eng. Rd. Law (2 ed.) 682; 6 Cyc. 650; Chesapeake & O. Ry. v. Topping, 25 Ky. Law 1390 [78 S. W. Rep. 135]; Holland v. Railway, 105 Mo. App. 117 [79 S. W. Rep. 508]; Yazoo & M. V. Ry. v. Humphrey, 83 Miss. 721 [36 So. Rep. 154]; Chicago R. I. & P. Ry. v. Buie, 34 Tex. App. 654 [73 S. W. Rep. 853]; Texas & P. Ry. v. Adams, 32 Tex. App. 112 [72 S. W. Rep. 81].

COOK, J.

The action below was by Walter W. Raub, by his guardian, William H. Raub, to recover damages for injuries sustained while a passenger upon the railroad of plaintiff in error, by a head-on collision.

Pennsylvania Co. v. Raub.

A judgment was obtained in the common pleas court and error is prosecuted in this court.

Two grounds of error are relied upon by plaintiff in error:

First. The guardian being appointed in a foreign state, Pennsylvania, and the ward continuing to live in that state, the action could not be maintained in this state.

Second. Raub was guilty of contributory negligence.

As to the second ground it is sufficient to say that we have examined the evidence carefully and we are of the opinion that the claim of contributory negligence is not sustained. Indeed we see little if any evidence to sustain such a claim and we therefore come to the second ground relied upon.

May a minor, through his guardian appointed in a foreign state, bring an action in this state to recover damages for a personal injury? Even if there were no statute in this state upon the question, it seems to us, that as a matter of comity, between the states, a minor, by his guardian appointed in another state, in such case, should be permitted to sue in this state. It is not a case of a guardian demanding money or personal property from an executor, administrator or other trustee, or even from persons not trustees, but simply the attempt to reduce to judgment an undetermined demand which the guardian claims to have in favor of his ward; and if after judgment there are any reasons why the foreign guardian should not come in possession of the money, the court has ample authority to require the guardian to qualify under the provisions of Rev. Stat. 6279. (Lan. 9820).

But has not the legislature specifically provided that a foreign guardian may bring such an action?

Revised Statutes 6290 (Lan. 9831), found in Chap. 3 of Title 2, which provides for the government and direction of guardians and other trustees, provides:

"Minors living out of this state and owning lands within the same shall be entitled to the benefit of this act; and guardians of minors residing out of this state, who have been appointed according to the laws of the state or territory where they may reside, shall have the right to bring and maintain actions and enforce the collection of judgments, rendered in such cases in their favor, in the same manner and to the same extent that they could do if they had been appointed under the laws of this state, upon giving security for the costs which may accrue in such actions, in the same way other nonresidents are obliged to do under the laws of this state. All applications for the sale of real estate by guardians of minors who live out of this state shall be made in the

county in which the land is situate; or, if situate in more counties than one, then in one of the counties in which a part of such real estate is situate; and additional security shall be required from such guardian or guardians, when deemed necessary, and such as may be approved by the probate court of the county in which such application is made.''

It is claimed that all the provisions of this section apply alone to the disposition of the lands of a minor situated within the state. We do not think so. If there had been a period instead of a semicolon after the words, ''shall be entitled to the benefit of this act,'' the section would, no doubt, be less ambiguous, but when we take into consideration the fact the legislature was intending to cure any supposed defect in our law that militated against foreign guardians by closing the doors of our courts against them, punctuation should have little effect.

. Something is also claimed for the words, ''rendered in such cases in their favor.'' What cases? Certainly the cases in which the actions have been prosecuted. We repeat that if there had been a period instead of a semicolon after the word ''act,'' there could be little, if any, doubt but that the language was intended to be used in its broad sense and applicable to all actions.

It is also claimed that the language of Rev. Stat. 6279 (Lan. 9820), tends to show that it was not intended that the provisions of Rev. Stat. 6290 (Lan. 9831) should apply to all actions.

It seems to us that the provisions of this section apply to a different subject entirely—to cases as we have heretofore intimated, where money or other property is in the lawful custody of a trustee or other person and which the foreign guardian desires to obtain possession of and remove it from the state. In such a case he must proceed under Rev. Stat. 6279 (Lan. 9820). Banning v. Gotshall, 62 Ohio St. 210 [56 N. E. Rep. 1030].

We should not be inclined to sustain the contention of plaintiff in error in this case, unless it were absolutely necessary to do so, as it waited until the case was ready for trial, and the jury in the box, before it made the objection that plaintiff below had no right to maintain the action by objecting to any evidence being introduced.

We are not unmindful of the fact that Judge Ricks of the United States circuit court of the northern district of Ohio, in the case of Smith v. Madden, 9 O. F. D. 320 [78 Fed. Rep. 833; 37 Bull. 291] came to a different conclusion than that to which we have arrived.

Judgment of common pleas court affirmed.

**Burrows** and **Laubie, JJ.,** concur.